# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Nelson v. County of Kendall*, 2013 IL App (2d) 120635

---

| | |
|---|---|
| Appellate Court Caption | LARRY NELSON, NELSON MULITMEDIA, INC., WSPY AM, INC., WSPY, INC., and WSPY-TV, INC., Plaintiffs-Appellants, v. THE COUNTY OF KENDALL, Defendant-Appellee (Eric Weis, Kendall County State's Attorney, Intervenor-Appellee).–LARRY NELSON, Plaintiff-Appellant, v. THE OFFICE OF THE KENDALL COUNTY STATE'S ATTORNEY, Defendant-Appellee. |
| District & No. | Second District<br>Docket Nos. 2-12-0635, 2-12-0636 cons. |
| Filed | May 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant State's Attorney's office is not a "public body" as defined by the Illinois Freedom of Information Act and could not be compelled to turn over emails generated by that office; therefore, the dismissal of plaintiffs' actions seeking the disclosure of those emails was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, Nos. 10-MR-143, 11-MR-146; the Hon. Marcy Buick, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Grant S. Wegner and R. Peter Grometer, both of Mahoney, Silverman & Cross, LLC, of Joliet, for appellants. |
|---|---|
| | Charles M. Colburn, of State's Attorneys Appellate Prosecutor's Office, of Springfield, and Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of Elgin, for appellee County of Kendall. |
| | Eric C. Weis, State's Attorney, of Yorkville (Leslie J. Johnson, Assistant State's Attorney, of counsel), for appellee Office of Kendall County State's Attorney. |
| | Donald M. Craven and Esther J. Seitz, both of Donald M. Craven, P.C., of Springfield, for *amicus curiae* Illinois Broadcasters Association. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jane Elinor Notz, Deputy Solicitor General, of counsel), for *amicus curiae* Attorney General of Illinois. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices McLaren and Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Larry Nelson, filed separate actions in the circuit court of Kendall County against Kendall County (county) (No. 10-MR-143) and the office of the Kendall County State's Attorney (State's Attorney) (No. 11-MR-146).[1] Pursuant to section 11(a) of the Illinois Freedom of Information Act (Act) (5 ILCS 140/11(a) (West 2010)), Nelson sought injunctions requiring the county and the State's Attorney to turn over emails that Nelson contended were responsive to records requests that Nelson had submitted to the two entities. The trial court dismissed Nelson's actions with prejudice, finding that the county could not be compelled to turn over emails generated by the State's Attorney's office and that the

---

[1]Nelson Multimedia, Inc., WSPY AM, Inc., WSPY, Inc., and WSPY-TV, Inc., each of which is a corporation of which Nelson is the president, also were named plaintiffs in the action against the county. We refer to these entities collectively as "Nelson." The Kendall County State's Attorney is Eric Weis.

State's Attorney, as a member of the judicial branch of state government, was not a "public body" as defined in section 2(a) of the Act (5 ILCS 140/2(a) (West 2010) (defining "[p]ublic body," in pertinent part, as "all legislative, executive, administrative, or advisory bodies of the State")). For the following reasons, we affirm.

¶ 2                                       BACKGROUND

¶ 3     The Act requires every public body in Illinois to make available to any person for inspection or copying all public records, subject to a long list of exceptions. 5 ILCS 140/3(a), 7 (West 2010). Pertinent to our case, the Act's definition of "public records" includes "all *** electronic communications *** pertaining to the transaction of public business *** having been prepared by or for, or having been used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2010). If a public body denies a request for public records, it must notify the requestor in writing and explain in detail the reasons for the denial. 5 ILCS 140/9(a) (West 2010). An individual whose request for public records is denied may either (1) file within 60 days a request for review with the public access counselor in the Attorney General's office (5 ILCS 140/9.5(a) (West 2010)), or (2) file an action in the circuit court for injunctive or declaratory relief (5 ILCS 140/11(a) (West 2010)). In the former situation, the Attorney General may issue a binding opinion (5 ILCS 140/9.5(f) (West 2010)), which will be considered a final decision of an administrative agency subject to administrative review (5 ILCS 140/11.5 (West 2010)). In the latter situation, the circuit court considers the matter *de novo* and has the power to enjoin a public body from withholding public records. 5 ILCS 140/11(d), (f) (West 2010).

¶ 4     Nelson filed two actions in the circuit court, seeking injunctive relief under section 11(a) of the Act. In the first action (No. 10-MR-143), filed against the county, Nelson alleged that the county had improperly denied a September 28, 2010, request for emails sent or received during January 2010 by two assistant State's Attorneys. After the State's Attorney intervened in the action, both the county and the State's Attorney filed motions to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2010)). The county argued that it could not be compelled to turn over emails that were generated by the State's Attorney's office. The State's Attorney argued that his office was not a "public body" but was part of the judicial branch of state government, which is not subject to the Act.

¶ 5     In the second action (No. 11-MR-146), filed against the State's Attorney, Nelson alleged that the State's Attorney had improperly denied a November 17, 2011, request for all emails sent or received during January 2010 by the State's Attorney and by three assistant State's Attorneys. As in case No. 10-MR-143, the State's Attorney filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code, arguing that his office was not a "public body" subject to the Act.

¶ 6     On May 11, 2012, the trial court granted the county's and the State's Attorney's motions and dismissed both of Nelson's actions with prejudice. The court concluded that the county could not be compelled to disclose emails generated by the State's Attorney's office. The court further concluded that the State's Attorney is a member of the judicial branch of state

government and is not a "public body" subject to the Act. Nelson timely appealed.

¶ 7                                    ANALYSIS

¶ 8        On appeal, Nelson does not challenge the trial court's determination that the county cannot be compelled to turn over emails generated by the State's Attorney's office. Nelson's only contention is that the trial court erred when it determined that the State's Attorney is a member of the judicial branch of state government and, thus, is not a "public body" subject to the Act. Whether a State's Attorney is a "public body" subject to the Act is an issue of first impression.

¶ 9        As an initial matter, we address Nelson's argument that the State's Attorney effectively admitted to being a "public body" under the Act when he partially approved a prior records request from Nelson in April 2010 that sought the same emails as Nelson's September 28, 2010, request that was the subject of case No.10-MR-143. Nelson cites no authority to support his position, so his argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (requiring the argument section of an appellant's brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Even if the argument were not forfeited, however, the issue before us involves a question of law, and we fail to see how the State's Attorney's response to an earlier records request bears upon that question.

¶ 10       Our primary objective in interpreting the Act is to ascertain and give effect to the intent of the legislature. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). The Act's plain language is the most reliable indicator of the legislature's intent. *Southern Illinoisan*, 218 Ill. 2d at 415. In determining the legislature's intent, we must construe words and phrases not in isolation but in light of the statute's other provisions. *Southern Illinoisan*, 218 Ill. 2d at 415. Because the issue before us involves a matter of statutory interpretation, and because Nelson appeals from section 2-619(a)(9) dismissals, our review is *de novo*. *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 359 (2009) (*de novo* review of a section 2-619(a)(9) dismissal); *Southern Illinoisan*, 218 Ill. 2d at 421 (*de novo* review of an issue of statutory construction).

¶ 11       The Act defines "public body," in pertinent part, as "all legislative, executive, administrative, or advisory bodies of the State, *** counties, *** [and] any subsidiary bodies of any of the foregoing." 5 ILCS 140/2(a) (West 2010). Notably absent from the definition is the word "judicial" or the phrase "judicial bodies." In *Copley Press, Inc. v. Administrative Office of the Courts*, 271 Ill. App. 3d 548 (1995), which involved a records request submitted to the Lake County pretrial services agency, the court addressed the absence of the word "judicial" from the Act's definition of public body. *Copley Press*, 271 Ill. App. 3d at 554. The court determined as a matter of first impression that, because the legislature specifically referenced the legislative and executive branches of government, without referencing the judicial branch, it must have intended to exclude the judiciary from the Act. *Copley Press*, 271 Ill. App. 3d at 554. The court went on to conclude that, because the Lake County pretrial services agency performed a clearly judicial function and was an arm of the court accountable to the chief judge, the agency belonged to the judicial branch and was not

-4-

subject to the Act. *Copley Press*, 271 Ill. App. 3d at 549, 554. In support of its holding, the court explained that the Act does not narrowly define (or define at all) the judiciary. *Copley Press*, 271 Ill. App. 3d at 554.

¶ 12       Both Nelson and the *amici curiae*[2] argue that, under the functional approach used in *Copley Press* (*i.e.*, the approach of looking to a governmental entity's functions to determine to which branch of government the entity belongs), the State's Attorney is not a member of the judicial branch of government. According to Nelson and the *amici curiae*, the relevant considerations under *Copley Press* are that (1) the State's Attorney is not an arm of the court accountable to the chief judge, and (2) the State's Attorney does not perform a clearly judicial function. Nelson and the *amici curiae* further argue that in several cases not involving the Act our supreme court has used a functional approach to determine that State's Attorneys are executive branch officials for separation-of-powers purposes. For example, in *People ex rel. Daley v. Suria*, 112 Ill. 2d 26 (1986), and in *People ex rel. Daley v. Moran*, 94 Ill. 2d 41 (1983), the court held that a judge violated the separation-of-powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, § 1) when the judge encroached upon a State's Attorney's charging and prosecutorial decisions. *Suria*, 112 Ill. 2d at 36; *Moran*, 94 Ill. 2d at 46. In both cases, the court described State's Attorneys as executive branch officials who perform the discretionary executive function of initiating and managing criminal prosecutions. *Suria*, 112 Ill. 2d at 37; *Moran*, 94 Ill. 2d at 45.

¶ 13       The State's Attorney responds that *Newman, Raiz & Shelmadine, LLC v. Brown*, 394 Ill. App. 3d 602 (2009), which was decided more recently than *Copley Press*, did not use a functional approach when it determined that the clerk of the circuit court of Cook County belonged to the judicial branch of state government and was not subject to the disclosure requirements of the Act. *Newman*, 394 Ill. App. 3d at 606. Rather, the State's Attorney points out, the court in *Newman* relied on the supreme court's holding in *Drury v. County of McLean*, 89 Ill. 2d 417 (1982), that clerks of the circuit courts " 'are nonjudicial members of the judicial branch of State government.' " *Newman*, 394 Ill. App. 3d at 605 (quoting *Drury*, 89 Ill. 2d at 420). *Drury*, in turn, relied on section 18(b) of the judicial article of the Illinois Constitution, which establishes clerks of the circuit courts and refers to them as " 'non-judicial officers of the Circuit Courts.' " *Drury*, 89 Ill. 2d at 422 (quoting Ill. Const. 1970, art. VI, § 18(b)). According to the State's Attorney, because the judicial article of the Illinois Constitution likewise establishes his office (Ill. Const. 1970, art. VI, § 19), he also should be treated as a member of the judicial branch of state government.

¶ 14       In response to *Suria*, *Moran*, and similar cases cited by Nelson and the *amici curiae*, the State's Attorney relies on *Ingemunson v. Hedges*, 133 Ill. 2d 364 (1990), which he contends "specifically rejected" a functional approach. In *Ingemunson*, the supreme court addressed the issue of whether the Illinois Constitution's prohibition against mid-term salary increases, which appears in the executive article, applied to State's Attorneys. *Ingemunson*, 133 Ill. 2d at 365-66 (citing Ill. Const. 1970, art. V, § 21). The court noted that the office of State's

---

[2]We allowed the Illinois Attorney General and the Illinois Broadcasters Association to file briefs as *amici curiae* in support of Nelson.

Attorney "is neither specifically named in the executive article nor one which is filled by executive appointment." *Ingemunson*, 133 Ill. 2d at 367. Rather, the court noted, the office "is established by section 19 of article VI, the judicial article." *Ingemunson*, 133 Ill. 2d at 367. The court concluded that, because the drafters of the constitution established the office of State's Attorney in the judicial article and specifically provided that State's Attorneys' salaries "shall be provided by law," the drafters "could not have intended that State's Attorneys be subject to the executive article's salary-raise prohibition." *Ingemunson*, 133 Ill. 2d at 367.

¶ 15        We disagree with the State's Attorney that either *Newman* or *Ingemunson* is apposite here. In *Newman*, the court relied on *Drury*, which in turn relied on section 18(b) of article VI of the constitution, in rejecting the plaintiff's argument that the circuit clerk qualified as a "public body" by virtue of being answerable to the county. *Newman*, 394 Ill. App. 3d at 605-06. Thus, the issue in *Newman* was not whether the circuit clerk was a judicial or an executive body, but whether the circuit clerk was a state- or a county-level official. The *Newman* court's resolution of that issue is not helpful to determining whether State's Attorneys are subject to the Act, which turns on whether the office of State's Attorney qualifies as a judicial or an executive body.

¶ 16        *Ingemunson* is even farther afield. That case involved the very narrow issue of whether mid-term salary increases for State's Attorneys were constitutional, and the key consideration in resolving that issue was the specific salary provision contained in section 19 of article VI of the constitution. *Ingemunson*, 133 Ill. 2d at 367. Contrary to the State's Attorney's argument, the court in *Ingemunson* did not reject a functional approach; it simply explained that a functional approach was unnecessary to resolve the issue before it. See *Ingemunson*, 133 Ill. 2d at 370.

¶ 17        Yet, we agree with the State's Attorney that the establishment of the office of State's Attorney in the judicial article of the Illinois Constitution is determinative of the issue before us. In reaching this conclusion, we emphasize that our task is not to answer the question of why the office of State's Attorney is established in the constitution's judicial article. Nor is it to decide whether State's Attorneys belong to the judicial or the executive branch of government. Rather, our task is to resolve the narrow issue of whether the legislature intended for the office of State's Attorney to qualify as a "public body" subject to the Act. As we will explain, in light of the placement of that office in the constitution's judicial article, we decline to infer a legislative intent to subject State's Attorneys to the Act in the absence of a clear expression to that effect in the statute.

¶ 18        Central to our decision is the consideration that the drafters of every Illinois Constitution that has provided for the office of State's Attorney, including the drafters of the current constitution, have placed that office in the judicial article. Ill. Const. 1848, art. V, § 28; Ill. Const. 1870, art. VI, § 22; Ill. Const. 1970, art. VI, § 19. The state's first constitution, ratified the year that Illinois became the twenty-first state, did not provide for the election or appointment of State's Attorneys. See Ill. Const. 1818. At that time, State's Attorneys were provided for by statute, and there was one appointed for each of the state's four judicial circuits. 1819 Ill. Laws 204 (§§ 1, 2). The state's second constitution, adopted in 1848, established State's Attorneys in the judicial article and provided for the general election of

-6-

one State's Attorney per judicial circuit, of which there were then nine. Ill. Const. 1848, art. V, § 28. Illinois's third constitution, ratified in 1870, again placed the office of State's Attorney in the judicial article and provided for the general election of one State's Attorney per county, as opposed to per circuit. Ill. Const. 1870, art. VI, § 22. Currently, the Illinois Constitution of 1970, in section 19 of the judicial article, provides for the general election of one State's Attorney per county, or of one State's Attorney serving two or more counties under certain circumstances. Ill. Const. 1970, art. VI, § 19.

¶ 19       The constitutional treatment of State's Attorneys is critical to our resolution of the issue before us, because the Act does not apply to judicial bodies, and because the legislature's use of the term "judicial," in another context, reveals that the term is broad enough to include an entity created under the constitution's judicial article. As we discussed above, while the Act applies to legislative, executive, administrative, and advisory bodies, it does not apply to judicial bodies. See 5 ILCS 140/2(a) (West 2010) (defining "public body," in pertinent part, as "all legislative, executive, administrative, or advisory bodies of the State"); *Copley Press*, 271 Ill. App. 3d at 554 (interpreting the Act's definition of "public body" as excluding the "judiciary"). Furthermore, the Act does not define the term "judicial." See *Copley Press*, 271 Ill. App. 3d at 554 (explaining that the Act does not narrowly define (or define at all) the "judiciary"). In another context, however, the legislature has designated the office of the State's Attorneys Appellate Prosecutor to be "a judicial agency of state government." 725 ILCS 210/3 (West 2010). The office of the State's Attorneys Appellate Prosecutor prosecutes appeals with the consent and at the direction of the State's Attorneys otherwise responsible for prosecuting the appeals. 725 ILCS 210/4.01 (West 2010). At the very least, this means that the legislature's use of the term "judicial" is broader than the term "judicial power," which our supreme court has defined as " 'the power which adjudicates upon the rights of citizens and to that end construes and applies the law.' " *People v. Joseph*, 113 Ill. 2d 36, 41 (1986) (quoting *People v. Hawkinson*, 324 Ill. 285, 287 (1927)). Given that the legislature's use of the term "judicial" includes the statutorily created appellate arm of the office of State's Attorney, in the absence of a clearly expressed legislative intent to the contrary we conclude that the term is broad enough also to include the office of State's Attorney, established in the constitution's judicial article.

¶ 20       The constitutional treatment of State's Attorneys in Illinois also renders the functional approach used in *Copley Press* not useful in the case before us. Although Nelson and the *amici curiae* urge us to follow this aspect of *Copley Press*, the pretrial services agency that was the recipient of the records request in that case was not a constitutionally created body. In the absence of a relevant constitutional provision, the court in *Copley Press* relied on the considerations that the pretrial services agency was an arm of the court accountable to the chief judge and performed a clearly judicial function. We need not interpret *Copley Press* as endorsing a functional approach for all cases involving an issue of whether a governmental entity meets the Act's definition of "public body."

¶ 21       Likewise, Nelson's and the *amici curiae*'s reliance on *Suria*, *Moran*, and similar separation-of-powers cases is misplaced. *Suria* and *Moran* were cases in which the trial judges encroached upon the State's Attorneys' prosecutorial and charging functions. As the court in *Ingemunson* later explained, it was necessary in *Suria* and *Moran* to look to "history

and tradition" to determine whether any violation of the constitution's separation-of-powers provision had occurred, because "[n]othing in the constitution explicitly addresses the question of who may or may not institute criminal proceedings or whether such a decision is an executive or judicial function." *Ingemunson*, 133 Ill. 2d at 370. Here, by contrast, the focal point of our inquiry is not the history and tradition of State's Attorneys' powers and functions. Nor is our focus on determining the branch of government to which State's Attorneys belong. Rather, our narrow objective is to determine only whether the legislature intended to include State's Attorneys within the Act's definition of "public body." Again, given that (1) the Act's definition of "public body" does not include judicial bodies, (2) the legislature's use of the term "judicial" in another context reveals that the term is broad enough to include an entity created under the constitution's judicial article, and (3) the office of State's Attorney is established in the constitution's judicial article, we decline to infer a legislative intent to include State's Attorneys within the Act's definition of "public body" absent a clear expression to that effect. We believe that we would risk usurping the legislative role were we to ignore these considerations and conclude that State's Attorneys are subject to the Act merely because they have powers and perform functions that in certain other contexts have been characterized as executive. See, *e.g.*, *Suria*, 112 Ill. 2d at 37; *Moran*, 94 Ill. 2d at 45.

¶ 22    Although Nelson and the *amici curiae* caution that a decision affirming the trial court would conflict with the holdings of separation-of-powers cases such as *Suria* and *Moran* and, ultimately, would violate the separation-of-powers provision of the Illinois Constitution, their concern is unfounded. As we explained above, our resolution of the narrow issue before us does not require us to categorize the State's Attorney as either a judicial or an executive branch official. Nor do we need to define or characterize State's Attorneys' powers and functions as either judicial or executive. We simply decline to infer a legislative intent to include State's Attorneys within the Act's definition of "public body." Nothing in our resolution of this issue affects the precedential value of any case, not involving the Act, that has defined or characterized the office of State's Attorney.

¶ 23                                        CONCLUSION
¶ 24    Based on the foregoing, we hold that the State's Attorney is not a "public body" subject to the Act. Therefore, we affirm the judgments of the circuit court of Kendall County.

¶ 25    Affirmed.